**IN THE CHANCERY COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| DISCOVERY GLOBAL OPPORTUNITY MASTER FUND, LTD., and DISCOVERY GLOBAL BEACON PARTNERS, LP, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 2024-0655-EMD |
| HERTZ GLOBAL HOLDINGS, INC., | ) ) | |
| Defendant. | ) ) ) | |

Submitted: November 12, 2024
Decided: February 7, 2025

*Upon Defendant Hertz Global Holdings, Inc.'s Motion to Dismiss*
**GRANTED**

Samuel T. Hirzel, II, Esquire, Brendan Patrick McDonnell, Esquire, Heyman Enerio Gattuso & Hirzel LLP, Wilmington, Delaware, Daniel A. Fliman, Esquire, Ryan Montefusco, Esquire, Isaac S. Sasson, Esquire, John F. Iaffaldano, Esquire, Paul Hastings LLP, New York, New York. *Attorneys for Plaintiffs Discovery Global Opportunity Master Find, Ltd. and Discovery Global Beacon partners, LP.*

Blake Rohrbacher, Esquire, Kevin M. Kidwell, Esquire, Richards, Layton & Finger, P.A., Wilmington, Delaware, Andrew Ditchfield, Esquire, Alison B. Miller, Esquire, Kyra M. Kaufman, Esquire, Davis Polk & Wardwell LLP, New York, New York. *Attorneys for Defendant Hertz Global Holdings, Inc.*

**DAVIS, J.**

## I. INTRODUCTION

This is a breach of contract action.[1] Plaintiffs Discovery Global Opportunity Master Fund, Ltd. and Discovery Global Beacon Partners, LP (collectively, "Discovery") bring claims against Defendant Hertz Global Holdings, Inc. ("Hertz") arising out of a warrant agreement (the

---

[1] The Court of Chancery assigned the action to this Court on November 6, 2023, pursuant to the February 23, 2023 Cross-Designation Order under 8 *Del. C.* § 111. *See* Cross-Designation Letter and Order (D.I. No. 5).

"Warrant Agreement"). Discovery initiated this lawsuit by filing a verified complaint (the "Complaint") on June 14, 2024.[2] In the Complaint, Discovery alleges that Hertz engaged in a series of transactions that amount to a "Reorganization Event" as that term is defined in the Warrant Agreement. As a result, Discovery contends they are entitled to declaratory relief (Count I), monetary damages (Count II), and specific performance (Count III) for Hertz's failure to honor the Warrant Agreement.

Hertz filed Defendant's Motion to Dismiss Plaintiffs' Verified Complaint (the "Motion") on June 17, 2024.[3] Through the Motion, Hertz requests this Court to dismiss the Complaint in its entirety and find that no Reorganization Event has occurred in the transactions Discovery alleges in its Complaint.[4] Discovery opposes Hertz's Motion and filed Plaintiffs' Answering Brief in Opposition to Defendant's Motion to Dismiss (the "Opposition")[5] on August 30, 2024. The Court held a hearing on the Motion on November 12, 2024.[6] At the conclusion of the hearing, the Court took the Motion under advisement.

For the reasons stated below, the Court **GRANTS** the Motion.

## II. RELEVANT FACTS[7]

### A. THE PARTIES

Discovery Global Opportunity Master Fund, Ltd. is a company organized under the laws of the Cayman Islands.[8] Discovery Global Beacon Partners, LP is a limited partnership

---

[2] Verified Complaint (D.I. No. 1) ("Compl.").
[3] Def.'s Mot. to Dismiss Pls.' Verified Complaint (D.I. No. 2) ("MTD").
[4] *Id*.
[5] Pls.' Ans. Br. in Opp. to Def.'s Mot. to Dismiss (D.I. No. 12) ("Opp. Br.").
[6] D.I. No. 19.
[7] The following facts are derived from the well-pled allegations in the Complaint (D.I. No. 1). These allegations are presumed to be true solely for purposes of this opinion.
[8] Compl. ¶ 6.

organized under the laws of the State of Delaware.[9]  Hertz is a corporation organized under the laws of the State of Delaware.[10]

## B. THE WARRANT AGREEMENT

On May 22, 2020, as a result of the impact of the COVID-19 pandemic, Hertz filed a voluntary petition for relief under Chapter 11 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").[11]  On June 10, 2021, the Bankruptcy Court confirmed Hertz's plan of reorganization (the "Plan").[12]  Hertz officially emerged from bankruptcy on June 30, 2021.[13]  Pursuant to the Plan, Hertz and Computershare Trust Company, N.A. (as warrant agent) entered into the Warrant Agreement.[14]  Each warrant entitles the holder, upon the proper exercise and payment of the applicable exercise price, to receive from Hertz one share of common stock at a price of $13.80 per share.[15]  There are currently 82,710,029 Warrants outstanding.[16]  Discovery beneficially holds 9,161,086 Warrants, accounting for approximately 11% of the outstanding Warrants.[17]  The Warrants have a 30-year term that expires on June 30, 2051.[18]

The Warrant Agreement provides for certain circumstances under which Hertz must redeem the Warrants prior to the 30-year term.  Section 12(g)(1) includes the definition of a Reorganization Event as:

(g)  Recapitalizations, Reclassifications and Other Changes.

(i)  If any of the following events occur:

---

[9] Compl. ¶ 7.
[10] Id. ¶ 8.
[11] Id. ¶ 14.
[12] Id.
[13] Id. ¶ 15.
[14] Compl. Ex. A ("Warrant Agreement").
[15] Compl. ¶ 20.
[16] Id. ¶ 17–18.
[17] Id.
[18] Warrant Agreement § 7.

(A) Any recapitalization;

(B) Any reclassification or change of the outstanding shares of Common Stock (other than changes resulting from a subdivision or combination to which Section 12(a) applies);

(C) Any consolidation, merger or combination involving [Hertz];

(D) Any sale or conveyance to a third party of all or substantially all of [Hertz's] assets; or

(E) Any statutory share exchange,

(each such event a "Reorganization Event"), in each case as a result of which the Common Stock would be converted into, or exchanged for, stock, other securities, other property or assets (including Cash or any combination thereof) (the "Reference Property"), then following the effective time of the transaction, the right to receive shares of Common Stock upon exercise of a Warrant shall be changed to a right to receive, upon exercise of such Warrant, the kind and amount of shares of stock, other securities or other property or assets (including Cash or any combination thereof) that a holder of one share of Common Stock would have owned or been entitled to receive in connection with such Reorganization Event (such kind and amount of Reference Property per share of Common Stock, a " Unit of Reference Property")[.][19]

The Warrant Agreement does not define "recapitalization."[20] Section 12(g)(v) goes on to provide that the Warrants must be redeemed within five days of the consummation of a Change of Control Event:

"Change of Control Event" means any (1) the acquisition by a Person (other than [Hertz] or a wholly-owned subsidiary of [Hertz]) in a tender offer or a series of related tender offers of more than 50% of the outstanding Common Stock (determined on a fully-diluted basis), (2) merger, consolidation, amalgamation, statutory share exchange, business combination or other similar transaction or series of related transactions to which [Hertz] is a party, (3) sale, lease, transfer or other disposition of all or any portion of the assets of [Hertz] and its Subsidiaries, including in connection with a liquidation or winding up of the Company, or (4) Reorganization Event, which, in each of the cases of clauses (1) through (4), is

---

[19] Warrant Agreement § 12(g)(i).
[20] Compl. ¶ 24.

4

effected in such a way that the holders of Common Stock receive or are entitled to receive (either directly or subsequently in connection with a liquidation or winding up of the Company), with respect to or in exchange for Common Stock, cash, stock, securities or other assets or property (or any combination thereof), wherein Registered and Listed Shares represent less than 90% of the Market Price of all such cash, stock, securities or other assets or property to be received in respect of or in exchange for Common Stock.[21]

The Warrant Agreement requires Hertz to redeem the Warrants within five business days at the "Change of Control Payment Amount" when there has been a Reorganization Event—which includes a recapitalization.[22] The Warrant Agreement sets the redeeming price through a specific formula.[23]

## C. THE PURPORTED RECAPITALIZATION EVENTS

Between November 2021 and June 2022, Hertz engaged in a series of transactions to repurchase some of its outstanding Common Stock and incur debt.[24] In November 2021, Hertz repurchased 10,344,828 shares of Common Stock for $300 million.[25] Hertz also entered into a share repurchase program which caused Hertz to repurchase 97,783,047 shares of Common Stock for $2 billion.[26] In June 2022, Hertz created another share repurchase program which resulted in Hertz repurchasing 66,684,169 shares of Common Stock for $1.1 billion.[27] In total these transactions resulted in Hertz repurchasing shares of Common Stock for a total of $3.4 billion.[28]

---

[21] Warrant Agreement § 32(b)(x).
[22] Compl. ¶ 21–22.
[23] *See* Warrant Agreement § 32(b)(xi).
[24] Compl. ¶ 27.
[25] *Id.* ¶ 28.
[26] *Id.*
[27] *Id.* ¶ 29.
[28] *Id.* ¶ 30.

Hertz also issued $1.5 billion of unsecured senior notes consisting of $500 million Senior Notes due 2026 and $1 billion Senior Notes due 2029.[29]  Between November 2021 and December 31, 2023, Hertz increased the amount of its First Lien Revolving Credit Facility from $1.3 billion to $2.0 billion.[30]

Discovery contends that these transactions constituted a Change of Control Event which triggers Discovery's right to purchase Hertz shares at $13.80 per share.[31]  As such, Discovery contacted Hertz, on February 22, 2024, seeking redemption of their Warrants.[32]  Hertz refused to redeem the Warrants.[33]  Hertz disagreed with Discovery's contention that the transactions constituted a Change of Control Event and asserted that no redemption was owed as a result of the transactions.[34]

### III.    PARTIES' CONTENTIONS

#### A.  THE MOTION

Hertz maintains that dismissal is warranted because Discovery's interpretation of the Warrant Agreement is inconsistent with the plain and unambiguous terms of the contract.  Hertz argues that Discovery's interpretation disregards the Warrant Agreement's contractual requirements that trigger a mandatory redemption.  Hertz notes that the Warrant Agreement Section 12(g) requires a Reorganization Event which causes the Common Stock of Hertz to be converted into "Reference Property" before Hertz must redeem the Warrants.[35]

---

[29] *Id.* ¶ 32.
[30] *Id.* ¶ 33.
[31] *Id.* ¶ 40–41.
[32] *Id.* ¶ 40–42.
[33] *Id.*
[34] *Id.*
[35] Def.'s Opp. Brief in Support of Its Mot. to Dismiss Pls.' Verified Compl. at 17 (D.I. No. 8) ("Def.'s Br.").

Hertz contends that Discovery's interpretation of the Warrant Agreement creates an unreasonable and absurd result.[36]  Under Discovery's interpretation, even where Hertz acquired a company for cash through a merger, it would constitute a Reorganization Event.[37]  That reading would be unreasonable in light of the Warrant Agreement's commercial purpose.

Hertz goes on to argue that Discovery's interpretation destroys the purpose of Section 12(g)(i) and (v) which serve as "anti-destruction" clauses that prevent Warrant holders from losing their investments through events that would cause Hertz stock to cease to exist.[38]  Such events would cause the Warrants to become valueless.[39]  Conversion of the Warrant into the new underlying asset the stocks were exchanged for preserves the value of the Warrant.[40] Discovery's interpretation would only apply where Hertz shares are not facing that threat to its existence.[41]

## B.  THE OPPOSITION

The Opposition focuses on Hertz's Reorganization Events argument.   Discovery asserts that any examination of a Reorganization Event and "any reorganization" should not include as part of the definition the following language:

> in each case as a result of which the Common Stock would be converted into, or exchanged for, stock, other securities, other property or assets (including Cash or any combination thereof)[.]"[42]

Discovery contends that the relation between this language and the placement of the parenthetical in Section 12(g)(i) that identifies a Reorganization Event may be necessary to the

---

[36] Def.'s Br. at 19.
[37] *See id.* at 20; *see also* Warrant Agreement §12(g)(i)(C) ("any consolidation, merger or combination involving the Company").
[38] *See id.* at 22.
[39] *Id.* at 22–23.
[40] *Id.* at 24–26.
[41] *Id.* at 16.
[42] Opp. Br. at 18–19.

assessment of the overall Warrant Agreement. However, Discovery suggests that—when drafting the agreement—the parties did not intend to the language following parenthetical to be part of the definition of a Reorganization Event.[43]

## C. THE REPLY

Hertz responds by arguing that Discovery's claims are contrary to the plain and unambiguous language of the Warrant Agreement.[44] Discovery's interpretation of Section 12(g)(i) omits a key clause of the definition of a Reorganization Event that requires, "in each case as a result of which the Common Stock would be converted into, or exchanged for," Reference Property.[45] Hertz notes that Discovery interprets this clause to provide a mechanism for what happens *if* a Reorganization Event occurs.[46] Hertz argues that this is inconsistent with the plain and unambiguous language of the Warrant Agreement because it does not comport with the section when read as a whole.[47]

Hertz also contends that Discovery's interpretation of the Warrant Agreement is commercially unreasonable and contrary to the purpose of Warrant Agreement Section 12(g).[48] Hertz maintains that this section serves as an "anti-destruction" provision.[49] In other words, a provision that functions to prevent the destruction of the underlying asset upon which the Warrant was based.[50] In a merger, acquisition, asset sale, or other similar corporate transaction that fundamentally changed the makeup or composition of the company, the anti-destruction provisions would function to allow the Warrant holders to exercise their Warrants for the same

---

[43] *See* Opp. Br. at 21–22.
[44] Def.'s Reply Br. in Support of Its Mot. to Dismiss Pls.' Verified Compl. at 4 (D.I. No. 14) ("Def.'s Reply Br.").
[45] Warrant Agreement § 12(g)(i).
[46] Def.'s. Reply Br. at 6.
[47] *Id*. at 11.
[48] *Id*. at 1.
[49] *Id*.
[50] *Id*. at 14–15.

8

value they would have received if each Warrant holder held the same amount of stock in Hertz.[51] Hertz argues that Discovery's argument should be dismissed because there has been no fundamental change to the underlying assets, the Hertz stock, that would warrant triggering the anti-destruction provision.[52]

## IV.    STANDARD OF REVIEW

Upon a motion to dismiss under Civil Rule 12(b)(6),[53] the trial court (i) accepts all well-pleaded factual allegations as true, (ii) accepts even vague allegations as well-pleaded if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[54]  However, the court must "ignore conclusory allegations that lack specific supporting factual allegations."[55]  A motion to dismiss will be denied "unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances."[56]

## V.    DISCUSSION

Under Delaware law, to state a claim for breach of contract, a party must show: "(1) a contractual obligation; (2) a breach of that obligation; and (3) resulting damages."[57]  "In interpreting contract language, clear and unambiguous terms are interpreted according to their ordinary and usual meaning."[58]  "Delaware adheres to the 'objective' theory of contracts, *i.e.*[,] a

---

[51] *Id*. at 14.
[52] *See id*. at 14–19.
[53] The 12(b)(6) standard of review is identical in the Court of Chancery and Superior Court.  *See CLP Toxicology, Inc. v. Casla Bio Holdings LLC*, 2020 WL 3564622, at *9 n.65 (Del. Ch. June 29, 2020) (collecting authorities).
[54] *See Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011); *see also Doe v. Cedars Academy,* 2010 WL 5825343, at *3 (Del. Super. Oct. 27, 2010).
[55] *Ramunno v. Cawley,* 705 A.2d 1029, 1034 (Del. 1998).
[56] *Id*.
[57] *Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 548 (Del. Super. 2005).
[58] *Allied Cap. Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006).

9

contract's construction should be that which would be understood by an objective, reasonable third party."[59]  "Contract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language."[60]  "Absent some ambiguity, Delaware courts will not distort or twist contract language under the guise of construing it."[61]  This Court will give effect to the parties' intentions as reflected by the terms of an unambiguous contract, "construing the agreement as a whole as reflected in the four corners of the contract."[62] "Contractual interpretation operates under the assumption that the parties never include superfluous verbiage in their agreement, and that each word should be given meaning and effect by the court."[63]

The Court looks for guidance to the decision in *Texas Pacific Land Corp. v. Horizon Kinetics LLC*.[64]  In *Horizon Kinetics*, the Court of Chancery recognized that a "recapitalization" is a contract term that, by itself, has no generally accepted meaning in law or accounting.[65]  Read in isolation, a "recapitalization" is an ambiguous term.[66]  Neither the parties nor Delaware jurisprudence can provide this Court with a firm definition for the phrase "recapitalization." Thus, this Court must conduct an analysis of the term in its commercial context, in the context of the Warrant Agreement, and with respect to the Court's previous findings in *Horizon Kinetics*.

---

[59] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (citing *NBC Universal v. Paxson Commc'ns*, 2005 WL 1038997, at *5 (Del. Ch. Apr. 29, 2005)).

[60] *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997).

[61] *Allied Cap. Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006).

[62] *Texas Pacific Land Corp. v. Horizon Kinetics LLC*, 306 A.3d 530, 548 (Del. Ch. 2023).

[63] *NAMA Hldgs., LLC v. World Mkt. Ctr. Venture, LLC*, 948 A.2d 411, 419 (Del. Ch. 2007).

[64] 306 A.3d at 530.

[65] *Id.* at 556 (citing *Wood v. Coastal States Gas Corp.*, 401 A.2d 932, 939 (Del. 1979)).

[66] *Id.*

The *Horizon Kinetics* court took definitions and other proposed meanings of the phrase "recapitalization" and considered them in turn.[67]  First, the Merriam-Webster Dictionary defines recapitalization as "a revision of the capital structure of a corporation."[68]  Second, Black's Law Dictionary likewise defines "recapitalization" as

> [a]n adjustment or recasting of a corporation's capital structure—that is, its stocks, bonds, or other securities—through amendment of the articles of incorporation or merger with a parent or subsidiary. An example of recapitalization is the elimination of unpaid preferred dividends and the creation of a new class of senior securities.

Third, the Oxford Learner's Dictionary defines a "recapitalization" as "the act of providing a company, etc. with more money, especially by replacing its debt with stock (=shares in the business)."[69]

The Court also considers its own experience and, "admittedly subjective sense of what constitutes a recapitalization."[70]  The *Horizon Kinetics* court reasoned that "[w]ords appear in sentences, and their meaning depends on context."[71]  Ultimately, the *Horizon Kinetics* court relied upon extrinsic evidence regarding what the parties believed before litigation to reveal whether the disputed transaction comprised a recapitalization.[72]  That type of evidence is unavailable here at this stage in the litigation.  However, the Court has available to it evidence of the commercial framework that has been alleged in the Complaint.  Moreover, the Court has access to the context of the Warrant Agreement for analysis.

---

[67] *Id*.
[68] Recapitalization, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/recapitalization (last visited Dec. 23, 2024).
[69] Recapitalization, *The Oxford Learner's Dictionary*, https://www.oxfordlearnersdictionaries.com/us/definition/english/recapitalization (last visited Dec. 23, 2024).
[70] *Horizon Kinetics LLC*, 306 A.3d at 558.
[71] *Id*. at 557.
[72] *Id*. at 567.

The Supreme Court has also opined on a similar provision in *Wood v. Coastal States Gas Corp.*[73] There, the Supreme Court addressed a challenge to a complex litigation settlement plan where Coastal States Gas Corp. spun off a subsidiary.[74] The challenging preferred shareholders brought suit arguing that the spin off was a recapitalization. The Supreme Court looked at the language of the contract and found that the spin-off was not a recapitalization under the contract.[75] The Supreme Court stressed the importance of the language of the contract, noting that preferred shareholders were to receive

> in lieu of the Common Stock otherwise issuable to him upon conversion of his…Preferred Stock, but at the conversion ratio stated in this Article…which would otherwise be applicable at the time of conversion, the same kind and amount of securities or assets as may be distributable upon such recapitalization…with respect to the Common Stock of [Coastal States Gas Corp.].[76]

The Supreme Court noted that, like in this case, the shares continued to exist after the spin-off— *i.e.*, no exchange of the existing common stock.[77] The Supreme Court concluded that, before the recapitalization provision became applicable, the common stock must cease to exist and something must be given in lieu of that stock.[78] This was true even though the settlement plan amounted to a "enormous" change to the financial structure of Coastal States Gas Corp.[79]

Hertz argues that the Warrant Agreement Section 12(g)(i) defines a Reorganization Event. This would include in that definition "in each case as a result of which the Common Stock would be converted into, or exchanged for, stock, other securities, other property or assets[.]"[80] That phrase suggests that a Reorganization Event requires the conversion of *the* Common Stock, not

---

[73] 401 A.2d at 932 (Del. 1979).
[74] *Id*. at 936.
[75] *Id*. at 938.
[76] *Id*. at 938-39.
[77] *Id*. at 939.
[78] *Id*.
[79] *Id*. at 938.
[80] Warrant Agreement §12(g)(i).

some or most, but all of the Common Stock must be converted into some other asset. This, as Hertz suggests, serves to protect Discovery and other Warrant Holders from the risk that their Warrants would be deemed worthless if the shares underpinning the value of the Warrants ceased to exist as a result of mergers, acquisitions, asset sales, or other corporate transactions that would have the effect of converting the shares into some other property.[81]

Warrant Agreement Section 12(g)(v) obligates Hertz to redeem the Warrants upon a Change of Control Event within five business days. A Change of Control event may be a Reorganization Event wherein the consideration received is at least 10% cash.[82] The transactions alleged in the Complaint are repurchases of stock for 100% cash.[83] Thus, if the transactions constitute a Reorganization Event, they also constitute a Change of Control Event. "Any recapitalization" is a Reorganization Event.[84] By including a recapitalization in the definition of a Reorganization Event, the parties sought to include something beyond the other four Reorganization Events.[85]

To understand what is a "recapitalization," the Court must read all of Warrant Agreement Section 12(g)(i) to provide meaning to the Warrant Agreement and the parties intentions to understand the plain meaning of a Reorganization Event.[86] The commercial context of the Warrant Agreement also indicates that "recapitalization" must be read in conjunction with the entirety of Warrant Agreement Section 12(g)(i). This section lists five "Reorganization Event[s]." Moreover, the section further conditions each Reorganization Event with "in each

---

[81] *See* Def.'s Opp. Br. at 20.
[82] Warrant Agreement §12(g)(v).
[83] Compl. ¶ 38.
[84] Warrant Agreement §12(g)(i).
[85] *Horizon Kinetics LLC*, 306 A.3d at 556 ("By including a recapitalization, the parties seemingly thought they were adding something beyond what the other terms covered, so it seems logical that a recapitalization means something [other than the other listed events.]").
[86] *See id.* at 548.

case as a result of which the Common Stock would be converted into, or exchanged for, stock, other securities, other property or assets (including Cash or any combination thereof)[.]"[87]

The Warrant Agreement's language indicates that for each of the listed five transaction to qualify as a "Reorganization Event," the event must convert all of the Common Stock into another form of consideration such as stock of a potential buyer or other transaction by which the Common Stock, all of it, is either converted into or exchanged for other consideration.[88] This is the logical unambiguous reading of Warrant Agreement Section 12(g)(i). The "in each case" language is in the same sentence, cannot be ignored, and clearly relates to the five listed transactions.

The repurchase and debt financing of Hertz's shares, even in an amount up to $3.4 billion, does not amount to the significant structural changes to Hertz's capital makeup that a "recapitalization" suggests.[89] Hertz's stock still exists, and Discovery can point to no fact that suggests a sufficiently detrimental impact to the existence of the stock which underlies the Warrant Agreements or the ability of the Warrant Holders to exercise their Warrant rights at the appropriate time. To hold otherwise would stretch the Warrant Agreements meaning of a "Reorganization Event," would be overly inclusive and could produce absurd results. Accordingly, the Court cannot find that Discovery's proposed interpretation is a reasonable alternative interpretation of Warrant Agreement Section 12(g)(i).

---

[87] Warrant Agreement §12(g)(i).
[88] *See Horizon Kinetics LLC,* 306 A.3d at 556.
[89] *See id*. at 558 (suggesting that an increase in the amount of shares, by itself, is insufficient to be a recapitalization).

## VI. CONCLUSION

For the reasons stated above, the Court **GRANTS** the Motion.

**IT IS SO ORDERED**

February 7, 2025
Wilmington, Delaware

*/s/ Eric M. Davis*

Eric M. Davis, Judge

cc:    File&ServeXpress